## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) **BETTY JO KIRKWOOD**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIV-19-575-PRW |
| vs. ) | Case No.: _____ |
| ) | |
| (1) **BRENNTAG NORTH AMERICA, INC.** ) | |
| (sued individually and as successor-in-interest ) | JURY TRIAL DEMANDED |
| to MINERAL PIGMENT SOLUTIONS, ) | |
| INC. and as successor-in-interest to ) | |
| WHITTAKER CLARK & DANIELS, INC.; ) | |
| (2) **BRENNTAG SPECIALTIES, INC.** f/k/a ) | |
| MINERAL PIGMENT SOLUTIONS, INC. ) | |
| (sued individually and as successor-in-interest ) | |
| to WHITTAKER CLARK & DANIELS, INC.; ) | |
| (3) **COLGATE-PALMOLIVE COMPANY**; ) | |
| (4) **COTY, INC.**, for its Bourjois brand of ) | |
| products; ) | |
| (5) **CYPRUS MINES CORPORATION**; ) | |
| (6) **CYPRUS AMAX MINERALS** ) | |
| **COMPANY** (sued individually, doing business ) | |
| as, and as successor to AMERICAN TALC ) | |
| COMPANY, METROPOLITAN TALC CO. ) | |
| INC. and CHARLES MATHIEU INC. and ) | |
| SIERRA TALC COMPANY and UNITED ) | |
| TALC COMPANY); ) | |
| (7) **JOHNSON & JOHNSON**; ) | |
| (8) **JOHNSON & JOHNSON CONSUMER** ) | |
| **INC.**, a subsidiary of JOHNSON & ) | |
| JOHNSON; ) | |
| (9) **PFIZER INC.,** and, ) | |
| (10) **WHITTAKER CLARK & DANIELS,** ) | |
| **INC.**, ) | |
| ) | |
| Defendants, ) | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

## THE PARTIES

1.      Plaintiff BETTY JO KIRKWOOD is a citizen and resident of the County of Woodward, State of Oklahoma.

2.      Plaintiff BETTY JO KIRKWOOD was diagnosed with mesothelioma, an asbestos-related cancer, on or about April 12, 2019.

3.      Upon information and belief, and at all times hereinafter, each of the Defendants was the agent, servant, employee and/or joint venture of its Co-Defendants and each of them, and at all said times each Defendant was acting in the full course and scope of said agency, service, employee and/or joint venture.  For purposes of this Complaint, each Defendant hereinafter mentioned shall include the present business entity, as well as all of its predecessor corporations and entities as applicable.  Upon information and belief, each Defendant inclusive: (a) was and is an individual, corporation, partnership and/or unincorporated association organized and existing under and by virtue of the laws of some other state or foreign jurisdiction to do business in the State of Oklahoma; (b) in person or through an agent, transacts business in the State of Oklahoma; (c) regularly does and/or solicits business within the State of Oklahoma; (d) derives substantial revenue from goods used or consumed in the State of Oklahoma; and (e) expected or should have expected its acts to have consequences within the state of Oklahoma and derive substantial revenue from interstate and/or international commerce. At all relevant times, Defendants designed, marketed, manufactured, distributed, supplied and/or sold asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw

asbestos-containing talc of various kinds and grades (hereinafter collectively referred to as "Defendants' Products").

4.      Defendant **BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) is a Delaware corporation doing business in the State of Oklahoma whose registered agent for service of process is:  The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.  Defendant **BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) is being sued as a supplier of asbestos-containing talc.

5.      Defendant **BRENNTAG SPECIALTIES, INC.** f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) is a Delaware corporation doing business in the State of Oklahoma whose registered agent for service of process is:  Corporation Trust Company, Mountain View Office Park, 820 Bear Tavern Road, West Trenton, NJ 08628.  Defendant **BRENNTAG SPECIALTIES, INC.** f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) is being sued as a supplier of asbestos-containing talc.

6.      Defendant **COLGATE-PALMOLIVE COMPANY** is a Delaware corporation doing business in the State of Oklahoma whose registered agent for service of process is:  The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street,

Wilmington, DE 19801.  Defendant **COLGATE-PALMOLIVE COMPANY** is being sued as a manufacturer of Cashmere Bouquet talcum powder.

7.     Defendant **COTY, INC.,** for its Bourjois brand of products, is a Delaware corporation doing business in the State of Oklahoma whose registered agent for service of process is:  Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808. Defendant **COTY, INC.,** for its Bourjois brand of products, is being sued as a manufacturer of Bourjois Evening in Paris talcum powder.

8.     Defendant **CYPRUS MINES CORPORATION** is a Delaware corporation doing business in the State of Oklahoma whose registered agent for service of process is: Registered Agent Solutions, Inc., 9 E. Loockerman Street, Suite 311, Dover, DE 19901. Defendant **CYPRUS MINES CORPORATION** is being sued as a supplier of asbestos-containing talc.

9.     Defendant **CYPRUS AMAX MINERALS COMPANY** (sued individually, doing business as, and as successor to AMERICAN TALC COMPANY, METROPOLITAN TALC CO. INC. and CHARLES MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC COMPANY) is a Delaware corporation doing business in the State of Oklahoma whose registered agent for service of process is:  Registered Agent Solutions, Inc., 9 E. Loockerman Street, Suite 311, Dover, DE 19901.  Defendant **CYPRUS AMAX MINERALS COMPANY** (sued individually, doing business as, and as successor to AMERICAN TALC COMPANY, METROPOLITAN TALC CO. INC. and CHARLES MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC COMPANY) is being sued as a supplier of asbestos-containing talc.

4

10.      Defendant **JOHNSON & JOHNSON** is a New Jersey corporation doing business in the State of Oklahoma whose registered agent for service of process is at its principal place of business:  One Johnson & Johnson Plaza, New Brunswick, NJ 08933. Defendant **JOHNSON & JOHNSON** is being sued as a manufacturer of asbestos-containing Johnson's Baby Powder.

11.      Defendant **JOHNSON & JOHNSON CONSUMER INC**., a subsidiary of JOHNSON & JOHNSON, is a New Jersey corporation doing business in the State of Oklahoma whose registered agent for service of process is at its principal place of business: One Johnson & Johnson Plaza, New Brunswick, NJ 08933.  Defendant **JOHNSON & JOHNSON CONSUMER INC.,** a subsidiary of JOHNSON & JOHNSON, is being sued as a manufacturer of asbestos-containing Johnson's Baby Powder.

12.      Defendant **PFIZER INC.** is a Delaware corporation doing business in the State of Oklahoma whose registered agent for service of process is:  The Corporation Company, 1833 S. Morgan Road, Oklahoma City, OK 73128.  Defendant **PFIZER INC.** is being sued as a supplier of asbestos-containing talc.

13.      Defendant **WHITTAKER CLARK & DANIELS, INC.** is a New Jersey corporation doing business in the State of Oklahoma whose registered agent for service of process is:  Joe Cobuzio c/o Tompkins, McGuire, Wacenfeld, et al., 3 Becker Farm Road, 4th Floor, Roseland, NJ 07068.  Defendant **WHITTAKER CLARK & DANIELS, INC.** is being sued as a supplier of asbestos-containing talc.

**JURISDICTION AND VENUE**

14.     This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §1332 because: (a) the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and (b) because the parties to the suit are completely diverse in that Defendants are not citizens of the same state as Plaintiff.

15.     Venue is proper under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to this case occurred within Oklahoma.

16.     Defendants listed on the caption are foreign corporations which are amenable to jurisdiction in the courts of the Western District of Oklahoma by virtue of their respective conduct of substantial and/or systematic business in the Western District of Oklahoma which subjects Defendants to the jurisdiction of the Western District of Oklahoma Courts pursuant to the State of Oklahoma Long-Arm Statute.   Defendant corporations do or in the past mined, manufactured, processed, imported, converted, compounded, supplied, and/or retailed substantial amounts of Defendants' Products which are or in the past were sold, distributed, and used in the Western District of Oklahoma.   As mentioned above, Plaintiff BETTY JO KIRKWOOD was exposed to asbestos while using Defendant's Products purchased in the States of Oklahoma, Texas and Kansas.

**NATURE OF ACTION**

17.     As a result of Defendants' wrongful conduct, Plaintiff BETTY JO KIRKWOOD has suffered from mesothelioma, a type of cancer caused by exposure to asbestos.  As a result of her diagnosis, she has suffered and continues to suffer substantial

physical pain, mental anguish, emotional distress, loss of enjoyment of life, disabilities, and loss of bodily functions.  She has also incurred and continues to incur substantial medical expenses and other damages associated with the diagnosis, treatment, and medical course of her cancer.  Further, as a result of Defendants' wrongful conduct, Plaintiff BETTY JO KIRKWOOD has incurred a loss of income.

## FACTUAL BACKGROUND

18.    Plaintiff BETTY JO KIRKWOOD alleges she was wrongfully exposed to and inhaled, ingested or otherwise absorbed asbestos fibers from Defendants' Products, an inherently dangerous toxic substance, through her personal, regular use of Cashmere Bouquet talcum powder and Bourjois Evening in Paris talcum powder from approximately the early 1950's to the late 1950's while residing in Oklahoma, Texas, and Kansas, and through her personal, regular use of Johnson's Baby Powder from approximately 1957 to 1966 while residing in Oklahoma.    Additionally, from approximately 1957 to 1966, Plaintiff was exposed to asbestos through her daily use of Johnson's Baby Powder on her children. During these time periods, she was also exposed to asbestos-containing talc supplied by Brenntag North America, Inc. (sued individually and as successor-in-interest to Mineral Pigment Solutions, Inc. and as successor-in-interest to Whittaker Clark & Daniels, Inc.), Brenntag Specialties, Inc. f/k/a Mineral Pigment Solutions, Inc. (sued individually and as successor-in-interest to Whittaker Clark & Daniels, Inc.), Cyprus Mines Corporation, Cyprus Amax Minerals Company (sued individually, doing business as, and as successor to American Talc Company, Metropolitan Talc Co. Inc. and Charles Mathieu Inc. and Sierra Talc Company and

United Talc Company), Pfizer Inc., and Whittaker Clark & Daniels, Inc.  Plaintiff's regular and frequent personal use of Cashmere Bouquet talcum powder, Bourjois Evening in Paris talcum powder, and Johnson's Baby Powder, and Plaintiff's regular and frequent use of and Johnson's Baby Powder on her children generated asbestos-containing dust and exposed Plaintiff to respirable asbestos fibers.

19.    Plaintiff BETTY JO KIRKWOOD was exposed to Defendants' Products which were manufactured, sold, distributed, or installed by the Defendants.

20.    At all times herein set forth, Defendants' Products were being employed in the manner and for the purposes for which they were intended.

21.    Plaintiff BETTY JO KIRKWOOD'S exposure to and inhalation, ingestion or absorption of asbestos fibers emanating from the use of Defendants' Products was completely foreseeable and could or should have been anticipated by the Defendants.

22.    Defendants knew or should have known that the asbestos fibers contained in Defendants' Products had a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them.

## FIRST CAUSE OF ACTION

## NEGLIGENCE

23.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

24.    At all times herein relevant, Defendants had a duty to exercise reasonable care and caution for the safety of Plaintiff BETTY JO KIRKWOOD and others personally using and around Defendants' Products.

25.     At all times herein relevant, Defendants are or were miners, manufacturers, distributors, processors, importers, converters, compounders, and/or retailers of Defendants' Products.

26.     Defendants, acting through their agents, servants, and/or employees caused, and have caused in the past, Defendants' Products to be placed in the stream of interstate commerce with the result that said Products came into use by Plaintiff BETTY JO KIRKWOOD.

27.     Plaintiff BETTY JO KIRKWOOD personally used and was exposed to Defendants' Products which were mined, manufactured, processed, imported, converted, compounded, and/or sold by Defendants, most of the exposure being within the State of Oklahoma, and some exposure being within the States of Texas and Kansas.

28.     Plaintiff BETTY JO KIRKWOOD was exposed to Defendant's Products which directly and proximately caused Plaintiff to develop an illness known and designated as mesothelioma.

29.     Defendants knew or should have known that the asbestos fibers contained in Defendants' Products had a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them.

30.     Defendants, acting by and through their servants, agents and employees, duly authorized and acting within the scope and authority of their employment, had a duty to design, develop, manufacture, distribute, supply, and sell Defendants' Products that were not unreasonably dangerous or defective, and/or a duty to warn Plaintiff BETTY JO KIRKWOOD and other foreseeable users of Defendants' Products of the

dangers and defects which the Defendants created, knew, or, within the exercise of reasonable care should have known, to render them safe for their intended and foreseeable uses.

31.    Plaintiff BETTY JO KIRKWOOD has sustained injuries, illnesses, disabilities, and damages caused by no fault of her own and which could not be avoided through the use of reasonable care.   Plaintiff's development of asbestos-related mesothelioma was directly and proximately caused by the negligence and carelessness of Defendants in that they manufactured, processed, sold, supplied or otherwise put Defendants' Products into the market and into the stream of interstate commerce, while they knew, or in the exercise of ordinary care should have known, that said Products were deleterious, poisonous, cancer-causing and/or inherently dangerous and harmful to Plaintiff BETTY JO KIRKWOOD's body, lungs, respiratory system, skin, health, and general well-being.   Further, Defendants knew, or in the exercise of reasonable care should have known, that Plaintiff BETTY JO KIRKWOOD would not know of such dangers to her health.

32.    Defendants were negligent in that they failed to exercise ordinary care and caution for the safety of Plaintiff BETTY JO KIRKWOOD in one or more of the following respects:

      a.    Including asbestos in Defendants' Products, and using asbestos even though it was foreseeable that persons such as Plaintiff, who was personally using and around said Products would inhale, ingest or otherwise absorb asbestos;

b.      Including asbestos in Defendants' Products, and using asbestos when the Defendants knew or should have known that asbestos would have a toxic, poisonous and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them;

c.      Including asbestos in Defendants' Products, and using asbestos when adequate substitutes for the asbestos in them were available;

d.      Failing to provide any or adequate warnings to persons personally using and around Defendants' Products of the dangers of inhaling, ingesting or otherwise absorbing the asbestos fibers contained in said Products;

e.      Failing to provide any or adequate instructions concerning the safe methods of personally using and in close proximity to Defendants' Products, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers in said Products;

f.      Failing to conduct tests on Defendants' Products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which persons such as Plaintiff might be exposed while personally using or in close proximity to said Products;

g.      Designing, manufacturing and selling Defendants' Products that included asbestos-containing components and required and/or specified the use of asbestos-containing replacement components.

33.      Defendants' actions, as stated herein, also constituted a conscious and

flagrant disregard of the rights and safety of Plaintiff BETTY JO KIRKWOOD, and by engaging in such actions, Defendants acted with the necessary malice, fraud, and oppression that justifies holding them liable for punitive damages.

34.     Specifically, Defendants are guilty of one or more of the following acts or omissions amounting to fraudulent misconduct, malice, and gross negligence:

a.     Intentionally or with gross negligence disregarded the safety of Plaintiff BETTY JO KIRKWOOD by including asbestos in Defendants' Products, or using asbestos, even though it was completely foreseeable  and could or should have been anticipated that persons such as Plaintiff BETTY JO KIRKWOOD, who was personally using or around Defendants' Products, would inhale, ingest or otherwise absorb asbestos;

b.     Intentionally or with gross negligence disregarded the safety of Plaintiff BETTY JO KIRKWOOD by including asbestos in Defendants' Products, or using asbestos, when the Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous and highly deleterious effect  upon the health of persons inhaling, ingesting or otherwise absorbing them;

c.     Intentionally or with gross negligence disregarded the safety of Plaintiff BETTY JO KIRKWOOD by including asbestos in Defendants' Products, or using asbestos, when adequate substitutes for the asbestos in them were available;

d.   Intentionally or with gross negligence disregarded the safety of Plaintiff BETTY JO KIRKWOOD by removing any warnings regarding the dangers of asbestos from the packing of Defendants' Products or on Defendants' Products themselves supplied to persons personally using and around said Products in their intended and/or reasonably foreseeable manner;

e.   Intentionally or with gross negligence disregarded the safety of Plaintiff BETTY JO KIRKWOOD by failing to provide any or adequate warnings to persons personally using and around Defendants' Products of the dangers of inhaling, ingesting or otherwise absorbing asbestos fibers in them;

f.   Intentionally or with gross negligence disregarded the safety of Plaintiff BETTY JO KIRKWOOD by failing to provide any or adequate instructions concerning the safe methods of personally using and being around Defendants' Products, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers said Products;

g.   Intentionally or with gross negligence disregarded the safety of Plaintiff BETTY JO KIRKWOOD by failing to conduct tests on Defendants' Products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which persons such as Plaintiff BETTY JO KIRKWOOD might be exposed while

personally using and around said Products;

h.    Intentionally or with gross negligence disregarded the safety of Plaintiff BETTY JO KIRKWOOD by failing to adequately label, warn, package, market, distribute, install, remove, or use asbestos in a reasonable manner which would minimize or eliminate the escape of asbestos dust fibers, therefore adding to the exposure of Plaintiff BETTY JO KIRKWOOD;

i.    Intentionally or with gross negligence disregarded the safety of Plaintiff BETTY JO KIRKWOOD by failing to take adequate steps to remedy the above failures including, but not limited to: (1) failure to recall or require removal of Defendants' Products, coupled with; (2) ongoing failure to conduct research as to how to cure or minimize asbestos injuries and how to use, install, or distribute asbestos so as to render it safe; and, (3) failure to promptly and safely remove asbestos in place;

j.    Intentionally or with gross negligence disregarded the safety of Plaintiff BETTY JO KIRKWOOD by failing to require and/or advise persons such as Plaintiff of hygiene practices designed to reduce and/or prevent the escape of asbestos dust fibers and to avoid inhaling, ingesting or otherwise absorbing the asbestos dust fibers in said Products.

35.     Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing Defendants' Products into the stream of commerce knew, or in the exercise of reasonable care should have known, about the risks associated with said Products.  Defendants' Products were defective at the time they left the control of the Defendants.

36.     Defendants were negligent and breached their duty of due care to Plaintiff BETTY JO KIRKWOOD by taking or failing to take the actions as previously alleged to avoid harm to Plaintiff and other foreseeable users, in light of the reasonably foreseeable dangers caused by the design, manufacture, sale, and/or distribution of Defendants' Products at issue in the stream of commerce.

37.     The hazards posed by exposure to Defendants' Products and the resulting injuries and damages to Plaintiff BETTY JO KIRKWOOD were reasonably foreseeable, or should have been reasonably foreseen by Defendants.

38.     Subsequent to the initial sale of Defendants' Products to Plaintiff BETTY JO KIRKWOOD, Defendants continued to accumulate additional knowledge regarding the hazards of Defendants' Products.

39.     Defendants had a continuing duty to provide post-sale warnings of dangers associated with Defendants' Products to users.

40.     At the time Defendants' Products left Defendants' control without adequate warnings or instructions, Defendants created an unreasonably dangerous condition that they knew or should have known would pose a substantial risk of harm to reasonably foreseeable claimants such as Plaintiff BETTY JO KIRKWOOD.  In the alternative, after

Defendants' Products left Defendants' control, Defendants became aware of or in the exercise of ordinary care should have known that their Products posed a substantial risk of harm to reasonably foreseeable users, such as Plaintiff, and failed to take reasonable steps to give adequate warning or instruction or to take any other reasonable action under the circumstances.

41.     As a direct and proximate result of one or more of the foregoing acts and/or omissions on the part of the Defendants, Plaintiff BETTY JO KIRKWOOD was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers causing Plaintiff to develop mesothelioma.  Plaintiff has been compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of her asbestos-induced mesothelioma and condition.  Plaintiff has also experienced great physical pain and mental anguish as a result of her asbestos-induced mesothelioma, as well as a substantial loss of income.

42.     As a result of the above, Plaintiff seeks damages as hereinafter demanded.

## SECOND CAUSE OF ACTION

## STRICT LIABILITY

43.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

44.     At all material times, Defendants were engaged in the manufacture, distribution, supply, sale, assembly, production, construction, and/or specification of Defendants' Products.

45.    Defendants, acting through their agents, servants, and/or employees, placed in the stream of commerce Defendants' Products which were designed, manufactured, distributed, marketed, and/or sold by Defendants and that were defective, unsafe and unreasonably dangerous for their intended and/or foreseeable use with the result that said Products came into use by Plaintiff BETTY JO KIRKWOOD.

46.    Defendants placed Defendants' Products on the market and knew or should have known they would be used without inspection for defects.

47.    Defendants failed to design, manufacture, market, distribute, supply, and sell Defendants' Products in such a manner as to render them safe for their intended and foreseeable uses.  By way of example, and not limitation, Defendants:

    a.    Failed to design, develop, manufacture and test Defendants' Products in such a manner as to render them safe for their intended and foreseeable use, when Defendants knew or should have known that the foreseeable use of and intended purpose of Defendants' Products was by persons, specifically Plaintiff BETTY JO KIRKWOOD, who personally used and was around said Products;

    b.    Marketed and sold Defendants' Products that were in an unreasonably dangerous and defective condition, presenting a hazardous risk to Plaintiff BETTY JO KIRKWOOD's well-being;

    c.    Failed to recall or attempt to repair the defective Defendants' Products when Defendants are and have been aware of the propensity of said Products to injure Plaintiff BETTY JO KIRKWOOD;

17

   d.  Failed to properly test Defendants' Products to ensure that they were reasonably safe for use throughout their lifetime.

48. Moreover, when Defendants' Products left Defendants' possession and were placed on the market they were defective in that:

   a.  When used in the intended or reasonably foreseeable manner, Defendants' Products were not reasonably safe for their intended use;

   b.  When used in the intended or reasonably foreseeable manner, Defendants' Products failed to perform as safely as would be expected by an ordinary user or consumer;

   c.  When used in the intended or reasonably foreseeable manner, Defendants' Products caused a risk of harm beyond that which would be contemplated by the ordinary user or consumer;

   d.  Defendants' Products were defectively designed because they were more dangerous than would be contemplated by an ordinary user, and also because the risks of the products outweighed their benefits;

   e.  Defendants' Products were defectively manufactured as they failed to comply with their own specifications.

49. Defendants violated the requirements of Section 402A of the Restatement of Torts 2d, all of which proximately resulted in Plaintiff BETTY JO KIRKWOOD's asbestos-related mesothelioma.

50. Additionally, although Defendants knew, or in the exercise of ordinary care should have known, that Defendants' Products were deleterious and highly harmful to

Plaintiff BETTY JO KIRKWOOD's health, Defendants nonetheless:

      a.     Failed to advise or warn Plaintiff BETTY JO KIRKWOOD of the dangerous characteristics of Defendants' Products;

      b.     Failed to provide Plaintiff BETTY JO KIRKWOOD with the knowledge as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if any, to protect Plaintiff BETTY JO KIRKWOOD from being harmed by exposure to Defendants' Products;

      c.     Failed to place any or contain adequate warnings on containers of Defendants' Products alerting Plaintiff BETTY JO KIRKWOOD of the dangers to her health caused by contact with Defendants' Products;

      d.     Failed to take reasonable precautions or to exercise reasonable care to publish, adopt and enforce a safety plan and/or a safe method of handling Defendants' Products in a safe manner.

51.    Defendants' Products were also defective due to any and inadequate warnings or instructions during and after the time of marketing in that Defendants knew, or in the exercise of reasonable care should have known, about the risks associated with Defendants' Products and failed to provide any, reasonable and/or adequate warnings or instructions in light of the likelihood that said Products would cause serious physical harm to Plaintiff BETTY JO KIRKWOOD.

52.    As a direct and proximate result of using Defendants' Products for the

general purposes for which they were designed and intended, Plaintiff BETTY JO KIRKWOOD was exposed to asbestos and has been injured as described herein.

53.    Accordingly, Defendants are strictly liable to Plaintiff BETTY JO KIRKWOOD for their failure to warn and for the defective design and manufacture and/or marketing, distributing, supplying and selling defective Defendants' Products.

54.  As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

### THIRD CAUSE OF ACTION

### INADEQUATE DESIGN, FORMULATION AND MANUFACTURE

55.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

56.    At all material times, Defendants were engaged in the manufacture, distribution, supply, sale, assembly, production, construction, and/or specification of Defendants' Products.

57.    Defendants, acting through their agents, servants, and/or employees placed in the stream of commerce Defendants' Products designed, manufactured, distributed, marketed, and/or sold by Defendants that were defective, unsafe and unreasonably dangerous for their intended and/or foreseeable uses with the result that Defendants' Products came into use by Plaintiff BETTY JO KIRKWOOD, and fibers from Defendants' Products were frequently inhaled and ingested by Plaintiff.

58.    Defendants, acting by and through their servants, agents and employees, duly authorized and acting within the scope and authority of their employment, had a duty to design, manufacture and sell Defendants' Products that were not unreasonably

dangerous or defective and/or a duty to warn Plaintiff BETTY JO KIRKWOOD and foreseeable users and bystanders to Defendants' Products of the dangers and defects which the Defendants created, knew, or within the exercise of reasonable care, should have known.

59.   Defendants acted unreasonably in designing and/or formulating Defendants' Products which were harmful to Plaintiff BETTY JO KIRKWOOD's body, lungs, respiratory system, skin and health.   Defendants acted unreasonably in the following acts and/or omissions:

> a.   Failing to adopt a practical, feasible, and otherwise reasonably alternative design that was safer, that could have been reasonably adopted, and that would have prevented or substantially reduced the risk of harm to individuals such as Plaintiff BETTY JO KIRKWOOD without substantially impairing the usefulness, practicality or desirability of Defendants' Products; and

> b.   Using a design that was so unreasonable that reasonable person, aware of the relevant facts, would not use or consume Defendants' Products of this design.

> c.   Allowing the use of talc that contains asbestos to be used in the manufacture of Defendants' Products when said Products were supposed to be asbestos free.

60.   Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing Defendants' Products into the stream of commerce knew, or in the

exercise of reasonable care should have known, about the risks associated with Defendants' Products.  Defendants' Products in question were defective at the time they left the control of the Defendants.

61.     Defendant's unreasonable acts in designing Defendants' Products manufactured, distributed, sold and specified by Defendants were a proximate cause of Plaintiff BETTY JO KIRKWOOD's development of mesothelioma, and as a consequence of which through no fault of her own, she was severely injured, disabled and damaged.

62.     As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

## FOURTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY

63.     Plaintiff realleges the preceding paragraphs as if fully set forth herein, and to the extent necessary, pleads this cause of action in the alternative.

64.  Defendants impliedly warranted that Defendants' Products were of good and merchantable quality and fit for their intended purpose.

65.     The implied warranty made by Defendants that Defendants' Products were of good and merchantable quality and fit for their particular intended use was breached in that certain harmful, poisonous, and deleterious matter was given off into the atmosphere wherein Plaintiff BETTY JO KIRKWOOD was personally using and in close proximity to Defendants' Products.

22

66.    Defendants caused Plaintiff BETTY JO KIRKWOOD's injuries, illnesses, disabilities, and damages as stated above by manufacturing, selling, installing, and distributing Defendants' Products which failed to meet express and implied warranties of merchantability and fitness for intended purposes upon which Plaintiff BETTY JO KIRKWOOD had a right to rely and did rely.

67.    As a direct and proximate result of the breaches of these warranties, Plaintiff BETTY JO KIRKWOOD was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers causing Plaintiff to develop the aforesaid mesothelioma, which has disabled and disfigured Plaintiff; Plaintiff has been compelled to expend and become liable for large sums of monies for hospital, medical, and other health care services necessary for the treatment of her asbestos-induced mesothelioma; and, Plaintiff has experienced great physical pain and mental anguish as a result of her asbestos-induced mesothelioma and conditions.  Plaintiff has incurred substantial loss of income.

68.  As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

## FIFTH CAUSE OF ACTION

## WILLFUL AND WANTON CONDUCT

69.    Plaintiff realleges the preceding paragraphs as if fully set forth herein, and to the extent necessary, pleads this cause of action in the alternative.

70.    Plaintiff BETTY JO KIRKWOOD and others in her position personally using and/or in close proximity to Defendants' Products, and the exposure and hazard to each of them, in Plaintiff BETTY JO KIRKWOOD's presence as well as others, was known or in the exercise of reasonable care should have been anticipated by the

Defendants and each of them.

71.     The Defendants have known or should have known since at least 1929 of medical and scientific data which clearly indicated that Defendants' Products were hazardous to the health and safety of Plaintiff BETTY JO KIRKWOOD and others in Plaintiff's position, and prompted by pecuniary motives the Defendants, individually and collectively ignored and failed to act upon said medical and scientific data and conspired to deprive the public and particularly the users of said medical and scientific data, therefore depriving them of the opportunity of free choice as to whether or not to expose themselves to Defendants' Products.  As a result, Plaintiff BETTY JO KIRKWOOD was severely damaged as is set forth below.

72.     The Defendants intentionally continued to conceal the dangers of asbestos exposure from 1929 through 1970's, thus denying Plaintiff BETTY JO KIRKWOOD the knowledge with which to take necessary safety precautions, such as periodic x-rays and medical examinations, cessation of smoking, and avoidance of further dust exposure. Specifically, Defendants' intentional, willful and wanton conduct included the following acts and omissions:

> a.     failure to warn prior users when the Defendants had knowledge of the need for monitoring due to prior exposure;
>
> b.     failure to issue recall type letters to prior users;
>
> c.     frustrating the publication of articles and literature from the 1930's through at least 1976;

d.      rejection by top management of advice of corporate officials to warn of the hazards of Defendants' Products, such rejection being motivated by the possibility of adverse effects on profits; and

e.      delaying the use of and/or providing intentionally inadequate warnings on Defendants' Products.

73.     The acts and omissions of each of the Defendants as hereinabove set forth were intentional, willful and wanton, and done with willful disregard of the safety of Plaintiff BETTY JO KIRKWOOD and others similarly situated at a time when each of the Defendants had knowledge, or should have had knowledge of, the dangerous effect of Defendants' Products upon the body of human beings, including Plaintiff BETTY JO KIRKWOOD and others similarly situated, and even though forewarned by tests, standards, promulgations of rules and regulations, statutes, and ordinances recognized by the Defendants and subscribed to by them, nevertheless placed into the stream of commerce for their own profit dangerous Defendants' Products with full knowledge that Defendants' Products were being used and would be used in the future to the detriment of the health of Plaintiff BETTY JO KIRKWOOD and others similarly situated, and Plaintiff is thereby entitled to punitive damages.

74.     Accordingly, as a result of the Defendants' conduct which was conducted willfully, wantonly and with malice, and was grossly negligent and in total disregard for the health and safety of users and bystanders such as Plaintiff BETTY JO KIRKWOOD, Plaintiff therefore seeks exemplary and punitive damages against Defendants to punish the Defendants for their actions, which were willful, wanton, gross, with malice, and in

total disregard of the health and safety of the users and consumers of Defendants' Products.

## SIXTH CAUSE OF ACTION

## FAILURE TO WARN

75.     Plaintiff realleges the preceding paragraphs as if fully set forth herein, and to the extent necessary, pleads this cause of action in the alternative.

76.     At all times material hereto, the Defendants knew or should have known of the harmful effects and/or dangers of working with Defendants' Products and of exposure to inhalable asbestos.

77.     Defendants had a pre- and post-sale duty to warn Plaintiff BETTY JO KIRKWOOD individually, and individuals such as Plaintiff of the dangers associated with the use and/or inhalation of asbestos dust and fibers.

78.     Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from Defendants' Products, the Defendants failed to warn and/or inadequately warn Plaintiff BETTY JO KIRKWOOD of the dangers including, but not limited to:

    a.     Failing to provide adequate cautions, warnings, hazard statements and/or explanations with Defendants' Products which should have been designed to provide Plaintiff BETTY JO KIRKWOOD knowledge about the hazards caused by exposure to and/or dust from Defendants' Products and how to eliminate such hazards;

b.      Failing to provide adequate product inserts, informative brochures, employee training literature, posters, and/or other written materials with Defendants' Products which should have been designed to provide Plaintiff BETTY JO KIRKWOOD knowledge about the hazards caused by exposure to and/or dust from Defendants' Products and how to eliminate such hazards;

c.      Failing to conduct on-site personnel training sessions with exposed individuals which should have been designed to provide to those individuals knowledge about the hazards to them caused by exposure to and dust from Defendants' Products, and how to eliminate the hazards;

d.      Failing to adequately test and research Defendants' Products as to the hazards created during their use and failed thereafter to provide the results of such tests and research to exposed persons such as Plaintiff BETTY JO KIRKWOOD;

e.      Failing to inspect Defendants' Products to determine if the Defendants' Products being used were deleterious to the health of exposed individuals;

f.      Failing to design and process Defendants' Products in a manner intended to minimize exposure during normal use;

g.      Failing to specify and market Defendants' Products on the express agreement that necessary controls, work practices, and other

industrial hygiene controls would be implemented in conjunction with use of Defendants' Products after it was known or should have been known that adequate protective measures were not being implemented;

h.     Failing to recall their defective Defendants' Products or manufacture a reasonably safer alternative;

i.     Failing to take adequate precautions and industrial hygiene measures to protect exposed individuals such as Plaintiff BETTY JO KIRKWOOD when personally using and being in close proximity to Defendants' Products including, but not limited to, providing protection from dust and fibers emanating from the personal use; failing to provide warnings to Plaintiff BETTY JO KIRKWOOD and other users that exposure to dust and fibers from Defendants' Products was hazardous and carcinogenic;

j.     Otherwise failing to act reasonably under the totality of the circumstances.

79.     Defendants manufactured, processed and/or sold Defendants' Products used by Plaintiff BETTY JO KIRKWOOD during her personal use and use on her children. Thus, Defendants had a pre- and post-sale duty to warn individuals personally using Defendants' Products including, but not limited to, Plaintiff BETTY JO KIRKWOOD, of the dangers associated with the use and/or inhalation of dust and fibers from Defendants' Products.

80.     Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from Defendants' Products, Defendants acted unreasonably in failing to provide adequate warnings and/or instructions as to the hazards associated with exposure to Defendants' Products. Defendants had a continuing duty to provide post-sale warnings of dangers associated with Defendants' Products to users and bystanders.

81.     At the time Defendants' Products left Defendants' control without adequate warning or instruction, Defendants created an unreasonably dangerous condition that they knew or should have known would pose a substantial risk of harm to a reasonably foreseeable claimant, such as Plaintiff BETTY JO KIRKWOOD.  In the alternative, after Defendants' Products left Defendants' control, Defendants became aware of or in the exercise of ordinary care should have known that Defendants' Products posed a substantial risk of harm to a reasonably foreseeable user such as Plaintiff BETTY JO KIRKWOOD, and failed to take reasonable steps to give adequate warning or instruction or to take any other reasonable action under the circumstances.

82.     Defendants' failure to provide adequate warnings as to the hazards associated with exposure to Defendants' Products or to provide proper instructions on the use, handling, and storage of Defendants' Products caused Plaintiff BETTY JO KIRKWOOD to develop mesothelioma and as a consequence of which she was injured, disabled and damaged, therefore Plaintiff hereby makes a claim for damages from the Defendants jointly and severally.

83.    As a result of the Defendants' failure to warn, Plaintiff BETTY JO KIRKWOOD suffered the injuries, illnesses, disabilities and/or damages hereinafter alleged.

## SEVENTH CAUSE OF ACTION

## FRAUD

84.    Plaintiff realleges the preceding paragraphs as if fully set forth herein, and to the extent necessary, pleads this cause of action in the alternative.

85.    **Fraudulent Misrepresentation**; All Defendants are liable for their fraudulent misrepresentations:

      a.    First, each of these Defendants, via its employees, agents, advertisements, or any other authorized person or document, represented that certain facts were true when they were not. The specific identities of these employees, agents, advertisements, or any other authorized person or document are maintained in Defendants' records. Such records remain in the exclusive control of Defendants pursuant to Defendants' respective document retention policies. While Plaintiff does not currently know all of the specific advertisements, or the names of all of the employees, agents, or any other authorized person who made the representations, Plaintiff will have access to this information once discovery has commenced and will be able to specifically name the advertisements as well as the employees, agents, or any other authorized persons.

b.      Second, Defendants represented that the products they manufactured, supplied, or specified for use were not hazardous to humans. These representations were made before and during the years that Plaintiff purchased and was exposed to asbestos from Defendants' asbestos-containing and talcum powder products. Such representations were made either directly to Plaintiff, or to a third party intending and reasonably expecting that the substance of those representations would be repeated to Plaintiff.

c.      Third, Defendants knew that the representations were false when they made them, or they made the representations recklessly and without regard for their truth.

d.      Fourth, Defendants intended that Plaintiff, and/or the same class of persons as Plaintiff, rely on the representations or their substance.

e.      Fifth, Plaintiff reasonably relied on Defendants' representations or the substance of these representations.

f.      Sixth, Plaintiff developed mesothelioma.

g.      Seventh, Plaintiff's reliance on those representations was a substantial factor in causing Plaintiff's mesothelioma.

86.     **Fraudulent Concealment (Nondisclosure)**: All Defendants are liable for their fraudulent concealment (nondisclosure).

a.      First, each of these Defendants made affirmative statements that were so misleading (e.g. misleading "half-truths") that they gave rise

31

to a fraud cause of action even in the absence of a specific relationship or transaction as between each Defendant and Plaintiff. Specifically, Defendants stated that their products could be used safely while concealing that they were in fact lethal because they contained and released asbestos fibers.

b.    Second, Defendants (i) had exclusive knowledge of material facts not known to Plaintiff (as set forth above), (ii) actively concealed those material facts from Plaintiff, (iii) made partial representations but also suppressed material facts, as set forth above, and (iv) made factual representations, but did not disclose facts which materially qualified those representations. Such nondisclosures included Defendants representing their products as safe when used as intended and as fit for the particular purpose for which they were marketed, while not disclosing the facts that these products contained asbestos that would become airborne during the intended and foreseeable use of the products, rendering them dangerous and unfit for their intended purpose.

c.    Third, each Defendant entered into a relationship and/or a transaction with Plaintiff sufficient to give rise to a duty to disclose. For example, Plaintiff used or otherwise encountered Defendants' products that were purchased either directly from Defendants, Defendants' authorized dealers or suppliers, or any other entity upon

which Defendants derived a direct monetary benefit directly from Plaintiff 's purchase and use of the products. As for another example, Defendants directly advertised their products to those in Oklahoma, Texas, Kansas, and elsewhere as a symbol of freshness, cleanliness, and purity. Defendants advertised and marketed their products as being only the beacon of "freshness" and "comfort," eliminating friction on the skin, absorbing "excess wetness," helping keep skin feeling dry and comfortable, and "clinically proven gentle and mild." The Defendants compelled men and women through advertisements to dust themselves with the products to mask odors. Defendants derived direct monetary benefit from consumers' use of the products because Plaintiff decided to use or purchase Defendants' products.

d.   Fourth, Plaintiff did not know of the concealed facts.

e.   Fifth, Defendants intended to deceive Plaintiff by concealing the facts, and/or by making certain representations without disclosing additional facts that would have materially qualified those representations.

f.   Sixth, had the omitted information been disclosed, Plaintiff reasonably would have behaved differently.

g.   Seventh, Plaintiff developed mesothelioma.

h.   Eighth, each Defendant's concealment was a substantial factor in causing Plaintiff's mesothelioma.

87.    **Conspiracy to Commit Fraudulent Misrepresentation**: Plaintiff hereby incorporates by reference the allegations of Paragraph I of this Seventh Cause of Action as if fully stated herein. All Defendants are liable for their conspiracy to commit fraudulent misrepresentation.

   a.    First, Defendants were aware that their conspirators, which included all co-Defendants and others, planned to commit fraudulent misrepresentation against Plaintiff, and/or the same class of persons as Plaintiff.

   b.    Second, Defendants agreed with their conspirators and intended that the fraudulent misrepresentation be committed.

   c.    Third, Plaintiff developed mesothelioma.

   d.    Fourth, each Defendant's participation in the conspiracy was a substantial factor in causing Plaintiff's mesothelioma.

88.    **Conspiracy to Commit Fraudulent Concealment (Nondisclosure)**: Plaintiff hereby incorporates by reference the allegations of Paragraph II of this Seventh Cause of Action as if fully stated herein. All Defendants are liable for their conspiracy to commit fraudulent concealment.

   a.    First, Defendants were aware that their conspirators, which included all co-Defendants and others, planned to commit fraudulent concealment against Plaintiff, and/or the same class of persons as Plaintiff.

     b.     Second, Defendants agreed with their conspirators and intended that the fraudulent concealment be committed.

     c.     Third, Plaintiff developed mesothelioma.

     d.     Fourth, each Defendant's participation in the conspiracy was a substantial factor in causing Plaintiff's mesothelioma.

89.    **Knowledge of Hazards**: At all times pertinent hereto, all Defendants owed Plaintiff a duty, as provided for in 15 O.S. §§ 57-60 to abstain from injuring her person, property, or rights. In violation of that duty, these Defendants, and each of them, did do the acts and omissions, when a duty to act was imposed, as set forth herein, thereby proximately causing injury to Plaintiff. Such acts and omissions consisted of acts falling within 15 O.S. §§ 57-60, and more specifically were (i) suggestions of fact which were not true and which the Defendants did not believe to be true, (ii) assertions of fact of that which was not true, which the Defendants had no reasonable ground for believing it to be true, and (iii) the suppression of facts when a duty existed to disclose it, all as are more fully set forth herein, and the violation of which as to any one such item gave rise to a cause of action for violation of Plaintiff's rights as provided for in the aforementioned statute.

90.    Since 1924, all of the Defendants have known and possessed of the true facts (consisting of medical and scientific data and other knowledge) which clearly indicated that the materials and products referred to herein were and are hazardous to the health and safety of Plaintiff, and others similarly situated. Defendants engaged in the following acts and omissions:

a.    Did not label any of the aforementioned asbestos-containing materials and products as to the hazards of such materials and products to the health and safety of Plaintiff, and others in her position using these products, when the knowledge of such hazards was existing and known to Defendants, and each of them, since 1924. By not labeling such materials as to their said hazards, Defendants, and each of them, caused to be suggested as a fact to Plaintiff that it was safe for her to use such materials, when in fact these things were not true and Defendants did not believe them to be true.

b.    Suppressed information relating to the danger of using the aforementioned materials by requesting the suppression of information to Plaintiff, Plaintiff's class of persons, and the general public concerning the dangerous nature of the aforementioned materials to all persons, including users, bystanders and household members, by not allowing such information to be disseminated in a manner which would give general notice to the public and knowledge of the hazardous nature thereof when Defendants were bound to disclose such information.

c.    Sold the aforementioned products and materials to the public, including Plaintiff, and others in Oklahoma, Texas, Kansas, and other states without advising them of the dangers of use of such

materials and to those persons' household members, when Defendants knew of such dangers as set forth herein and above, and had a duty to disclose such dangers. Thus, Defendants caused to be positively asserted to Plaintiff and the public that which was not true and which Defendants had no reasonable ground for believing it to be true, in a manner not warranted by the information possessed by said Defendants, and each of them, of that which was and is not true, to wit, that it was safe for Plaintiff to use such materials and that it did not pose a risk of harm.

d.  Suppressed and continue to suppress from everyone, including Plaintiff, medical, scientific data, and knowledge of the accurate results of studies including, but not limited to, Waldemar C. Dreesen of the United States Public Health Service's 1933 report to the National Safety Council the results of a study conducted among tremolite, talc and slate workers. The study indicated that the talc was a hydrous calcium magnesium silicate, being 45 percent talc and 45 percent tremolite, and the National Safety Council stated "The results of the study seemed to indicate a relationship between the amount of dust inhaled and the effect of this dust on the lungs of the workers." As early as 1934, the National Safety Council was publishing information stating that "a cause of severe pulmonary injury is asbestos, a silicéte of magnesium." lathe September 1935

issue of National Safety News, an article entitled *No Halfway Measures in Dust Control* by Arthur S. Johnson reported lowered lung capacity resulting from "asbestosis" and "similar conditions" that developed "from exposure to excess of many mineral dusts relatively low in free silica content." The article further noted that claims for disabilities from workers who alleged exposure to "clay, talc, emery, and carborundum dusts" had "claims prosecuted successfully." The article concluded that "[i]n the absence of adequate diagnoses, occupational histories and a more satisfactory method of adjudicating claims than prosecution at common law, we must conclude that it is necessary to find a practical method for controlling all mineral dusts."

e.   Belonged to, participated in, and financially supported the Industrial Hygiene Foundation, Asbestos Information Association, the Asbestos Textile Institute (ATI), and other industry organizations, including the Cosmetic, Toiletry, and Fragrance Association (now known as the Personal Care Products Council), which actively promoted the suppression of information of the dangers to users of the aforementioned products and materials for and on behalf of Defendants, and each of them, thereby misleading Plaintiff to her prejudice through the suggestions and deceptions set forth above in this cause of action. ATI's Dust Control Committee, which changed

its name to the Air Hygiene Committee of ATI, was specifically enjoined to study the subject of dust control; discussions in such committee were held many times of (i) the dangers inherent in asbestos and the dangers which arise from the lack of control of dust and (ii) the suppression of such information from 1946 to a date unknown to Plaintiff at this time.

f.    Knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis in 1930 with the study of mine and mill workers at the Thetford asbestos mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina.  This information was disseminated through the ATI and other industry organizations to all other Defendants, and each of them, herein. Between 1942 and 1950, Defendants, and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and cancer, which information was disseminated through the ATI and other industry organizations to all other Defendants herein. Thereby, Defendants suggested as fact that which is not true and disseminated other facts likely to and did mislead Plaintiff for want of communication of true facts, which consisted of the previously described medical and scientific data and other knowledge by not

giving Plaintiff the true facts concerning such knowledge of these dangers, when Defendants were bound to disclose it.

g.    Failed to warn Plaintiff and others similarly situated regarding the nature of Defendants' talcum powder products. In 1968, a study presented at the American Industrial Hygiene Conference and published in the American Industrial Hygiene Association Journal concluded that "[all] of the 22 talcum products analyzed have a.. . fiber content. . . averaging 19%. The fibrous-material was predominantly talc but contained minor amounts of tremolite, anthophyllite, and chrysotile as these are often present in fibrous talc mineral deposits.  Unknown significant amounts of such materials in products that may be used without precautions may create an unsuspected problem." [Cralley, L.J., et al.; *Fibrous and Mineral Content of Cosmetic Talcum Products*, 29 Ant Ind. Hyg. Assoc. J.350 (1968).] Defendants failed to warn Plaintiff and others similarly situated that their talcum powder products are, among other things, dangerous when breathed and cause pathological effects without noticeable trauma, although Defendants possessed knowledge that such material was dangerous and a threat to the health of persons coming into contact therewith and under a duty to disclose it.

40

h.  Concealed from Plaintiff and others similarly situated the true nature of their exposure, the fact that Defendants knew that exposure to respirable asbestos meant that Plaintiff would inhale this asbestos, significantly increasing her risk of developing asbestosis, lung cancer, and mesothelioma; that Plaintiff that had in fact been exposed to respirable asbestos; that the materials to which Plaintiff was exposed would cause pathological effects in the human body without noticeable or perceptible trauma to warn her of injury; and Defendants engaged in these acts and omissions while under a duty to and bound to disclose this information.

i.  Failed to provide information to the public at large and buyers, users and physicians of Plaintiff for the purpose of conducting physical examinations of anyone whom came in contact with asbestos as to the true nature of the hazards of asbestos, in order for such physicians to diagnose and treat individuals coming into contact with asbestos, in that the materials to which Plaintiff had been exposed would cause pathological effects without noticeable trauma, even though Defendants were under a duty to supply such information and such failure was and is likely to mislead persons including Plaintiff as to the dangers and risk of harm to which they were exposed.

j.     Affirmatively misrepresented that asbestos-containing products were safe to use and handle, when Defendants knew such statements were false when made, or made said false statements recklessly and without regard for whether the statements were true.

91.     Each of the foregoing acts, suggestions, assertions, and forbearances to act when a duty existed to act, the said Defendants, and each of them, having such knowledge, knowing Plaintiff did not have such knowledge and would breathe such material innocently, was done falsely and fraudulently and with full intent to induce Plaintiff to be in a dangerous environment and to cause her to remain unaware of the true facts, all in violation of 15 O.S. §§ 57-60.

## BASIS FOR PUNITIVE DAMAGES

92.     **Malice, Oppression, and Fraud**: Plaintiff realleges the preceding paragraphs as if fully set forth herein, and to the extent necessary, pleads this cause of action in the alternative. All Defendants are liable for punitive damages because they engaged in the conduct that caused Plaintiff harm with malice, oppression, or fraud.

a.     First, these Defendants committed malice in that they acted with intent to harm when they caused Plaintiff's asbestos exposures, and because their conduct was despicable and was done with a willful and knowing disregard of the rights and safety of others.

b.     Second, these Defendants committed oppression in that their conduct was despicable and subjected Plaintiff to cruel and unjust hardship in knowing disregard of her rights.

  c.  Third, the Defendants committed fraud in that they intentionally and fraudulently concealed and misrepresented material facts and did so intending to harm Plaintiff, or with reckless disregard for whether their fraud would harm Plaintiff.

93. These Defendants' conduct constituting malice, oppression, and fraud was committed by, authorized by, and adopted by one or more officers, directors, and managing agents within the corporate hierarchy of each Defendant, who acted on behalf of each Defendant.

94. As a direct and proximate result of such intentional conduct by Defendants, their "alternate entities", and each of them, Plaintiff BETTY KIRKWOOD sustained the injuries, illnesses, disabilities, and damages alleged herein.

## EIGHTH CAUSE OF ACTION

## PUNITIVE DAMAGES

95. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein, and to the extent necessary, pleads this cause of action in the alternative.

96. Defendants have known or should have known since at least 1929 of medical and scientific data which clearly indicates that Defendants' Products were hazardous to the health and safety of Plaintiff BETTY JO KIRKWOOD and others in Plaintiff's position, and prompted by pecuniary motives, Defendants ignored and failed to act upon said medical and scientific data and deprived the public, and particularly the users of said medical and scientific data, depriving them therefore of the opportunity of

free choice as to whether or not to expose themselves to the asbestos-containing products of Defendants.  As a result, Plaintiff has been severely damaged as is set forth below.

97.    The acts and omissions of Defendants as hereinabove set forth were willful, wanton and reckless, and evinced a conscious disregard for the safety of Plaintiff BETTY JO KIRKWOOD and others similarly situated at a time when Defendants had knowledge, or should have had knowledge, of the dangerous effects of Defendants' Products upon the body of human beings, including Plaintiff and others similarly situated, and even though forewarned by tests, standards, promulgations of rules and regulations, statutes, and ordinances recognized by the Defendants and subscribed to by them, nevertheless placed into the stream of commerce, for their own profit, dangerous Defendants' Products with full knowledge that said Products were being used by and would be used to the detriment of the health of Plaintiff and others similarly situated, and Plaintiff is thereby entitled to punitive damages.

98.    Accordingly, as a result of the Defendant's conduct which was willful, wanton and reckless and in total disregard for the health and safety of the user or consumer such as Plaintiff BETTY JO KIRKWOOD, Plaintiff therefore seeks punitive damages against Defendants.

## **DAMAGES**

99.    The conduct of Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages resulting from the asbestos-related disease of Plaintiff BETTY JO KIRKWOOD, and of the following general and special damages including:

a.   Damages to punish Defendants for proximately causing Plaintiff BETTY JO KIRKWOOD's untimely injuries, illnesses, and disabilities;

b.   Physical pain and mental anguish sustained by Plaintiff BETTY JO KIRKWOOD in the past;

c.   Physical pain and mental anguish that Plaintiff BETTY JO KIRKWOOD, in reasonable probability, will sustain in the future;

d.   The past disfigurement suffered by Plaintiff BETTY JO KIRKWOOD;

e.   The future disfigurement that Plaintiff BETTY JO KIRKWOOD, in reasonable probability, will sustain in the future;

f.   The physical impairment sustained by Plaintiff BETTY JO KIRKWOOD in the past.

g.   The physical impairment that Plaintiff BETTY JO KIRKWOOD, in reasonable probability, will sustain in the future;

h.   Medical expenses incurred by Plaintiff BETTY JO KIRKWOOD in the past;

i.   Medical expenses that Plaintiff BETTY JO KIRKWOOD, in reasonable probability, will sustain in the future;

j.   Plaintiff BETTY JO KIRKWOOD's lost earning capacity sustained in the past;

k.   Plaintiff BETTY JO KIRKWOOD seeks punitive and exemplary

damages.

l.    Any and all other recoverable personal injury, survival, and/or wrongful death damages for Plaintiff and Plaintiffs' heirs.

WHEREFORE, Plaintiff prays for judgment against the Defendants for actual and punitive damages, lost wages and special damages in an amount to be determined by the trier of fact, in excess of $75,000.00 plus interest as provided by law and the costs of this action.

Dated this 25th day of June, 2019

Respectfully submitted,

/s/Steven T. Horton
Steven T. Horton, OBA No. 14589
HORTON LAW FIRM
114 N.W. 6th Street, Suite 201
Oklahoma City, Oklahoma 73102
Telephone:   405-606-8080
Facsimile:    405-606-8088
Email:          shorton@coxinet.net

 -and-

Dana C. Simon (*pro hac vice pending*)
Texas Bar No. 24032191
SIMON GREENSTONE PANATIER, PC
1201 Elm Street, Suite 3400
Dallas, Texas 75270
Telephone:   214-276-7680
Facsimile:    214-276-7699
Email:          dsimon@sgpblaw.com

**ATTORNEYS FOR PLAINTIFF**

**ATTORNEYS' LIEN CLAIMED**
**JURY TRIAL DEMANDED**